PER CURIAM: *
After we vacated Kenny Washington’s sentence, eight years elapsed before the district court re-sentenced him. During those eight years, Washington served his entire sentence of incarceration and completed a term of supervised release. All that remains of his original sentence is a *486 restitution obligation. Because the extraordinary delay between remand and re-sentencing violated Washington’s Sixth Amendment rights, Washington is entitled to vacatur of the unpaid portion of his restitution obligation.
I.
In 2003, a district court sentenced Washington to forty-six months of imprisonment and three years of supervised release for conspiracy to commit bank theft. Pursuant to the Mandatory Victims Restitution Act (MVRA), the district court also ordered restitution, to be paid jointly and severally by the co-conspirators. We affirmed. United States v. Washington, 95 Fed.Appx. 701 (5th Cir.2004). In 2005, the Supreme Court vacated our judgment and remanded for further consideration in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Washington v. United States, 543 U.S. 1102, 125 S.Ct. 998, 160 L.Ed.2d 1008 (2005). After we received supplemental briefing addressing Booker, we determined that the government failed to show that the district court would have imposed the same sentence absent the sentencing error, and we accordingly vacated Washington’s sentence and remanded to the district court for resentencing. United States v. Washington, 158 Fed.Appx. 528 (5th Cir.2005). However, Washington’s attorney did not advise Washington that his sentence had been vacated and, due to a “clerical oversight,” the district court did not re-sentence Washington. Instead, Washington completed his original forty-six-month sentence and was released from custody to begin the three-year term of supervised release that had been imposed in the original sentencing proceeding. Washington completed his supervised release and made payments of $9,517.35 in partial satisfaction of the restitution order.[1]
In April 2013, Washington finally learned that his sentence had been vacated. Shortly thereafter, in June 2013, Washington filed a pro se “motion to amend restitution order,” in which Washington asked the district court to “quash” the restitution order based on “the fact that [he] was left defectively unsentenced.” In response to Washington’s motion, the district court entered an order explaining that “[t]hrough a clerical oversight, the court did not resentence Defendant Washington as ordered by the appellate court.” The district court instructed a magistrate judge to appoint defense counsel and requested briefing on whether the delay in re-sentencing raised issues of “prejudice and abuse of discretion.” In January 2014, Washington, now represented by counsel, filed a motion to dismiss the indictment based on violation of his Sixth Amendment right to a speedy trial, or, alternatively, his Fifth Amendment right to due process of law.
The district court denied Washington’s pro se motion to amend the restitution order and his counseled motion to dismiss the indictment. The district court then held a re-sentencing hearing in May 2014 — more than eight years after we vacated Washington’s sentence. At the re-sentencing hearing, the district court rejected Washington’s alternative argument that the MVRA was unconstitutional, ruling that the mandate rule precluded reconsideration of the restitution order and, in the alternative, that the MVRA was constitutional. The district court then re-imposed the same 46-month sentence Washington had previously received, with credit for time served, re-imposed the three-year term of supervised release, which was im *487 mediately discharged, and re-imposed the restitution, with credit for the amounts previously paid. The practical effect of the district court’s judgment was that Washington remained responsible, jointly and severally with his co-conspirators, for the amount remaining on the restitution award. Washington timely appealed.
II.
The Sixth Amendment affords criminal defendants “the right to a speedy ... trial.” U.S. Const, amend. VI. Although many cases implicating the Sixth Amendment’s Speedy Trial Clause arise in the context of a delay before trial, we have held that “[t]he constitutionally guaranteed right to a speedy trial [also] applies to sentencing.”[2] United States v. Abour-Kassem, 78 F.3d 161, 167 (5th Cir.1996); see United States v. Campbell, 531 F.2d 1333, 1335 (5th Cir.1976). Accordingly, we have granted relief to a defendant who “has demonstrated extreme and unreasonable delay in sentencing, and has demonstrated that he has been prejudiced by the delay.” Juarez-Casares v. United States, 496 F.2d 190, 193 (5th Cir.1974). We review the district court’s conclusions of law de novo and its underlying factual findings for clear error. United States v. Molina-Solorio, 577 F.3d 300, 303-04 (5th Cir.2009).
We evaluate speedy trial claims under the four-factor framework established in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Campbell, 531 F.2d at 1335. The four factors are: (1) length of delay; (2) the reason for the delay; (3) the defendant’s diligence in asserting his right; and (4) the prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. None of these factors is either necessary or sufficient; rather, “they are related factors and must be considered together with such other circumstances as may be relevant.” Id. at 533, 92 S.Ct. 2182. Indeed, “[a] defendant need not necessarily show affirmative prejudice or any particular one of these factors to justify a finding by the court that there has been a denial of his right to a speedy trial.” Campbell, 531 F.2d at 1335. Moreover, at least in the context of a delay before trial, a rebuttable presumption of prejudice arises if “the first three factors weigh ‘heavily’ in the defendant’s favor.” United States v. Hernandez, 457 F.3d 416, 421 (5th Cir.2006); see also Doggett v. United States, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (“[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.”); id. at 655-58.
We have no trouble concluding that Washington’s Sixth Amendment rights were violated. Washington endured an eight-year delay between the time we vacated his sentence and the time the district court re-sentenced him. The Supreme Court has referred to an eight-year delay as “extraordinary,” Doggett v. United States, 505 U.S. 647, 658, 112 S.Ct. *488 2686, 120 L.Ed.2d 520 (1992), and we have done the same for a delay of five years, see United States v. Cardona, 302 F.3d 494, 497 (5th Cir.2002). Washington was not responsible for the “clerical oversight” that caused the delay, and Washington acted promptly upon learning that his rights may have been violated. In circumstances identical to these—albeit in the context of a delay before trial — the Supreme Court presumed prejudice and granted relief to the defendant. See Daggett, 505 U.S. at 658, 112 S.Ct. 2686 (‘When the Government’s negligence thus causes delay [of eight years], and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant’s acquiescence, nor persuasively rebutted, the' defendant is entitled to relief.” (internal citations and footnotes omitted)).
We need not, and do not, explore whether the presumption of prejudice applies exactly the same way in the context of a delay before sentencing as it does in the context of a delay before trial. Indeed, the presumption may not arise as readily in the sentencing context, or perhaps might be more easily rebutted. See United States v. Sanders, 452 F.3d 572, 580 (6th Cir.2006) (“[W]hen all that remains of a case is the imposition of a sentence, the danger of losing witnesses or other' evidence needed to mount an adequate defense is minimized, if not eliminated completely.”).[3] However, we apply the presumption here, for two reasons. The first reason is the extreme delay in this case — eight years simply is beyond the pale. The second reason is that, at the time of re-sentencing, Washington already had served his entire forty-six-month sentence and his term of supervised release. The delay in this case thus deprived the district court of the opportunity to conduct a meaningful de novo re-sentencing proceeding, and it deprived Washington of any incentive to offer arguments in support of a lesser term of incarceration or supervised release. Washington’s completion of his sentence thus differentiates this ease from others in which defendants complained of long sentencing delays. See, e.g., United States v. Ray, 578 F.3d 184 (2d Cir.2009) (defendant did not serve any of her sentence during fifteen-year delay before re-sentencing); Abou-Kassem, 78 F.3d 161 (defendant had served less than ten years of a sixty-five year sentence). Where, as here, a defendant serves his entire term of incarceration and supervised release (i.e., the portions of the sentence over which the district court has discretion) before the government seeks to re-sentence him, we cannot credibly retrodict what would have happened in a timely proceeding. Cf. United States v. Howard, 577 F.2d 269, 271 (5th Cir.1978) (“He suggests that he was prejudiced by receiving a harsher sentence than he otherwise would have. It is of course impossible to probe the truth of this suggestion.”).[4]
In light of the extreme delay, Washington’s lack of fault in causing that delay, and Washington’s completion of most of *489 his sentence, Washington was presumptively prejudiced. The government has not rebutted the presumption of prejudice. Cf. Doggett, 505 U.S. at 658 n. 4, 112 S.Ct. 2686 (‘While the Government ably counters Doggett’s efforts to demonstrate particularized trial prejudice, it has not, and probably could not have, affirmatively proved that the delay left his ability to defend himself unimpaired.”). Accordingly, we hold that Washington is entitled to relief.
In the context of unconstitutional delays before trial, the proper remedy is dismissal of the indictment. Barker, 407 U.S. at 521, 92 S.Ct. 2182. Analogously, in the context of unconstitutional delays before sentencing, “[t]he proper remedy ... is to vacate the sentence.” Juarez-Casares, 496 F.2d at 193. Indeed, at oral argument, Washington conceded that he is not entitled to dismissal of the indictment or reversal of his conviction. Under the circumstances of this case, the only practical relief we can grant Washington is to vacate the unpaid portion of his restitution obligation. It is so ordered. Cf. United States v. Jones, 744 F.3d 1362 (D.C.Cir.2014) (holding that “twelve- and fifteen-month reductions that [defendants] received were adequate remedies for any speedy sentencing violation they may have suffered”).
III.
Washington also argues that the restitution award should be vacated because the MVRA is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny. He claims that the MVRA unconstitutionally permits the district court to make “factual findings ’ that subject the defendant to a greater range of punishment than that warranted by the jury’s return of a verdict of guilty.” This argument is moot in light of our determination that the delay of Washington’s re-sentencing violated his Sixth Amendment rights. In any event, we have previously held that the MVRA is constitutional. See United States v. Rosbottom, 763 F.3d 408, 420 (5th Cir.2014); United States v. Read, 710 F.3d 219, 231 (5th Cir.2012). Washington requests that we take his case en banc to reconsider our precedent, but doing so is unnecessary to resolve this appeal.[5]
VACATED IN PART.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4..

. Washington has not asked for this money to be returned to him.

. "Whether sentencing proceedings are within the ambit of the Speedy Trial Clause is a question that has not been resolved by the Supreme Court.” United States v. Ray, 578 F.3d 184, 191-92 (2d Cir.2009). In Pollard v. United States, the Supreme Court "assume[d] arguendo that sentence is part of the trial for purposes of the Sixth Amendment,” but then denied the petitioner’s claim on the merits. 352 U.S. 354, 361. 77 S.Ct. 481. 1 L.Ed.2d 393 (1957). The circuits are split on the question. Compare, e.g., Burkett v. Cunningham, 826 F.2d 1208, 1220 (3d Cir.1987) (holding that the Speedy Trial Clause of the Sixth Amendment protects the right to speedy sentencing), with Ray, 578 F.3d at 199 (holding that the Speedy Trial Clause of the Sixth Amendment does not apply to sentencing proceedings).

. Not all danger of losing witnesses or other evidence is eliminated in the context of re-sentencing. For example, after a long delay, a defendant may be unable to locate evidence of, or witnesses to testify about, mitigating circumstances like childhood abusé.

. We do not, of course, suggest that the district court was disingenuous in conducting the re-sentencing hearing. To the contrary, the record reflects that the district court conducted a thorough and thoughtful hearing. No amount of probity and care, however, can overcome the fact that Washington had already served his entire term of incarceration and supervised release, thereby altering irrevocably the circumstances under which the re-sentencing hearing took place.

. Washington’s challenge to the MVRA is also barred by both the doctrine of waiver and the mandate rule. Because Washington could have brought the MVRA challenge on initial appeal, but did not, he has waived that claim. See Lindquist v. City of Pasadena, 669 F.3d 225, 239 (5th Cir.2012) (”[A]n issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand.” (emphasis omitted)). Likewise, because Washington could have raised the MVRA issue on initial appeal but did not, the mandate rule foreclosed the district court on remand, and forecloses us now, from considering that issue. See United States v. Griffith, 522 F.3d 607, 610 (5th Cir.2008) (explaining that, pursuant to the mandate rule, all "issues not arising out of this court’s ruling and not raised in the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below”); United States v. Lee, 358 F.3d 315, 321, 323 (5th Cir.2004) (explaining that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court,” which includes issues that "could have been brought in the original appeal” (emphasis omitted)).
We note that the government does not argue that Washington's Sixth Amendment claim is barred by either waiver or the mandate rule, and, indeed, that claim could not be barred by either — as that claim did not exist at the time of the initial appeal. See Lee, 358 F.3d at 324 (“An issue is not waived if there was no reason to raise it in the initial appeal.”); Griffith, 522 F.3d at 611 (explaining that the mandate rule bars only those claims that were “germane to the original appeal,” *490 i.e., the party raising the claim must have had "sufficient incentive to raise that issue in the prior proceedings" (alterations omitted)).